Good morning, your honors. Christopher Johns for Mr. Guan, the appellant. And this case involves a Brady-Giglio violation and falls within this circuit's analysis in U.S. v. Blanco. It involves impeachment evidence regarding a key witness, Peter He, and whether the reliability, when the reliability of that witness may be determinative of guilt or innocence of the defendant. Now, all three elements of the Brady-Giglio violation are present in this case. Number one, the government failed to disclose that their star witness, Peter He, who was cooperating, was also cooperating in an FBI loan sharking investigation in the Northern District. Two, Judge Patel specifically instructed AUSA Marikin to, quote, disclose this information regarding Peter He's cooperation in the FBI loan sharking investigation. And three, and that was not disclosed, and three, the evidence was material, or the failure to disclose was prejudicial because of the impeachment value. What was the benefit to the witness? The benefit was under the plea agreement, Your Honor, that he would receive a reduction in a sentence pursuant to a 5K1 motion if he cooperated with the government. And what was clear that he was cooperating with the Secret Service, first in the case in chief against his alleged fellow co-conspirator, Mr. Guan. And it was also brought up that he was cooperating in a DEA investigation in Sacramento. That was a different case. Yes, that's correct, Your Honor. And then this FBI investigation was something else in the Northern District of California, and that was a loan sharking investigation. Well, a benefit in a different case is not the benefit in this case. That's not correct, Your Honor, because in this case the plea agreement, Provision 9G, specifically provided that he agreed to cooperate with the U.S. Attorney's Office and other law enforcement agencies. And when we go then eventually to the 5K1 motion, this cooperation with the DEA investigation and this cooperation with the FBI investigation was all factored in as a part of his cooperation with the government that justified him getting a reduction in a sentence that resulted in a sentence of time served. When you say it was factored, who did the factoring? Excuse me, Your Honor? Who did the factoring in? You say it was factored in. Who factored it? The court did. It is in the government's 5K1 motion. When Peter He was sentenced, the government, pursuant to his plea agreement, brought a 5K1 motion for a reduction in sentence. Now, what case is that? That was in the case against Peter He. Not the case in which he was a witness. Well, yes, Peter He was the witness. And when he was sentenced, he was sentenced after the conviction of Mr. Guan, and he was the co-conspirator with Mr. Guan in the case who pled out. And then when he was sentenced after the conviction came down, In the same case? In the same case, the government then brings this 5K1 motion and says he gave us substantial cooperation and helped us enormously. Not only in the case against my client, Mr. Guan, in the case in chief, but also in the DEA investigation, but more importantly in the FBI loan sharking investigation. And that's why this should have been disclosed, because it paints a different picture of Mr. He. Mr. He becomes the all-purpose government witness. He's cooperating with the Secret Service in the case in chief against my client. He's cooperating with the DEA up in Sacramento. And lo and behold, he's also cooperating with the FBI in the Northern District. You know what's causing that static? You're close to the mic, and your voice doesn't require it. Okay. I'm sorry, Your Honor. Oh, it doesn't bother me, but it might bother you, because you keep, don't you hear the... I do, Your Honor. That's right. Well, that's what's causing it. Thank you, Your Honor. But, so that's why it was important to go ahead and disclose this. But more importantly, it was the trial judge, Judge Patel, specifically told AUSA Markin, look, I see this ex-party application where you wanted to keep this under seal and not be disclosed. But she told him point blank, you disclose this. And it was not disclosed that he was participating in, cooperating in this FBI loan sharking investigation in the Northern District. Now, the defense lawyer did stumble across the DEA investigation also which was not disclosed, but he did get that. So this appeal is predicated on the failure to disclose the FBI loan sharking investigation. So... I think we understand your point. Thank you, Your Honor. I'm going to reserve my time then. Thank you. May it please the Court. Good morning, Your Honors. My name is Owen Mardekin, arguing for the Aptly United States. There are three components of a Brady claim. The defendant must show, first, that evidence was suppressed, second, that the evidence was favorable to the defense, and third, that the evidence was material to the question of guilt or the question of punishment. And I'd like to talk about that first prong, suppression, because there was no Brady evidence in this case that was not disclosed to the district court before trial. And it is, in fact, incorrect to say that the district court ever ordered the United States to disclose that one piece of Brady evidence, the participation in the FBI investigation to the defense. That statement is taken completely out of context in the defense brief. At the point that the judge made the statements that are quoted at page 27 of the defense reply brief, the judge hadn't even ruled on this issue. The judge hadn't even reviewed the evidence. The judge was simply saying, well, I see you have this evidence, and I'm going to look into it, but maybe you can work it out beforehand. So the judge absolutely did not rule that the United States had to disclose any evidence of this investigation, of cooperation in this investigation to the defense. In fact, the judge ruled just the opposite. And that opposite ruling is at about page 151 through 153 of the sealed excerpts of record, where the judge said that that did not have to be disclosed to the defense. Now, the significance of all this is that this court has held, in United States v. Dupuy, that by submitting a Brady issue to the judge, the government satisfies its duty to disclose. Even in United States v. Blanco, which is the case on which the defense relies very heavily, the court actually says in that case, at page 294 of the opinion, that the AUSA can resolve a potential Brady issue by disclosing it to the district court, even during trial. And that's exactly what was done here. In fact, it was disclosed before trial and then further described to the judge orally during trial. So there is no Brady suppression in this case. The issue is rather whether the district court abused her discretion in making her ruling that this particular aspect of Brady material or potential Brady material did not have to be disclosed to the defense. She did not abuse her discretion, and there are several reasons why. First of all, the defense already knew at that point about this witness's cooperation in two other simultaneous investigations, one with the DEA, one with the Secret Service. The defense already knew that this witness had a plea agreement, a cooperation plea agreement with the government, and that this witness expected some benefit from his cooperation. Indeed, the record shows that the witness, Peter He, was cross-examined extensively on that issue. He was, in fact, called back to the stand twice to make sure the defense got enough chance to cross-examine him on that cooperation. Second of all, the district court did evaluate the FBI investigation material and decided that one aspect of impeaching material did have to be disclosed to the defense, and that was the fact that Peter He operated a presumably illegal Mahjong parlor in San Francisco and that he probably didn't pay taxes on his income from that parlor, and also that that was contradictory to his testimony that he hadn't broken the law during that time. So that piece of evidence was disclosed to the defense, and indeed the defense was allowed to or was able to cross-examine Peter He at length on that topic. Third, the district court did make clear that it was concerned about witness safety with respect to Peter He, and that is, in fact, the reason why the filings in this appeal were done under seal. So the court recognized that there was some witness safety concern to having him testify about this ongoing investigation. But finally, and significantly, the district court did not find that this evidence of this particular investigation was material, and that is another component of the Brady test. This court has said in the United States v. Wilkes that material evidence is evidence that is of a different character than evidence that is already known to the defense. That is not the case here. The investigation, the bare fact of Peter He's participation in this one investigation is no different in character from his participation in the two other investigations that were disclosed to the defense and the defense was able to cross-examine him about during trial. Ultimately, the question of materiality is, does this particular evidence, if not disclosed, undermine confidence in the outcome of the trial? It does not in this case. The evidence of this defendant's guilt was overwhelming, and it didn't come from Peter He's mouth. It came from videotapes of the defendant engaged in illegal conduct. It came from the testimony of other witnesses showing photographs of the defendant using fraudulent credit cards. It came from the defendant's own mouth after he was arrested. What Peter He did, and what the government, in fact, argued in its rebuttal closing, was Peter He, by himself, could not have established the government's case. He couldn't do it on his own. He was, in fact, a criminal. No one doubted that, and it wasn't a secret to anyone. But what was important is that everything he said was corroborated by other evidence in this case, by the videotape, by the pattern of charges with these fraudulent credit card numbers. Every piece of evidence in this case that came out of Peter He's mouth was corroborated by numerous other pieces of evidence in this case. Ultimately, there was no suppression of evidence in this case. There could not have been a Brady violation. Now, there is another claim that the defendant makes that he did not address at argument, and that is this outrageous government conduct claim involving one of the government secret service agents. There are two major problems with that claim. The first problem is that the basis for that claim was completely denied by the defense star witness for that claim, Terry Fail, who got up on the stand during an evidentiary hearing and said, no, I didn't feel intimidated at all. I didn't feel that this government witness was trying to, this government agent was trying to intimidate me from testifying or to change my testimony. And, of course, the second problem with this argument is that the district court did hold that evidentiary hearing, and she found facts, and she found that the claim was not credible, to the extent that she didn't even feel she needed to hear the testimony of the government agent because she didn't find the defense case all that believable. So in sum, Your Honors, the defendant has simply not established the components of a Brady claim in this case or shown any kind of outrageous government conduct, really, at all. And for those reasons, Your Honors, I would respectfully ask the court to affirm. Thank you. Thank you. We'll hear rebuttal. Your Honor, first of all, under United States v. Price that we cite, this is a Brady-Giglio violation. It's renewed de novo by this court. It's a question of law. That's footnote 6 to the Price case. You may want to, he suggested two things. There's no Brady violation, and there's no outrageous conduct. If he's right, you lose. So you might want to go straight to tell us why he's wrong. There was a Brady violation, and the judge specifically told them to disclose. It's at pages 26 and 27 of our reply brief, and I have it in the opening brief. But on page 27, the judge says disclose. She was looking at the ex parte application. No, we know what she said. But what is, what do you think the Brady, what's the Brady material that you wanted that you don't have? Just the fact that he was participating in another case, not this one? Correct. In addition to this case, he was participating in this FBI loan sharking investigation. Because our theory is this, that that changes the credibility. Do you have any case that says a witness who is cooperating in case A and not case B must be identified in case B? Yes. The Blanco case says that. The facts of that case is that the witness was complying with the DEA, but then also he had a special deal going on with the INS, and they didn't disclose that. And that was the essence of Blanco. And that's why this court reversed Blanco and sent it back for fact finding with the district judge. If there's any question here of what the judge . . . Oh, the facts are pretty clear, I think, aren't they? Yeah, well, I think they are, and I think this court can make that decision. And so there was a Brady violation because what they're doing, what they did was an end run on the trial judge's order. The essence of this FBI loan sharking investigation was that Mr. He was going to card houses. Okay? He's going to card houses, and he's gambling there. It wasn't this pie gal that they told him about. Yeah, they talked to him about this pie gal. This had nothing to do with it. And that comes clear in the 5K1 motion. I don't want to rush you past your time, but I think what you're arguing is what nobody would disagree with, the problem that you face, and I could be wrong, but why don't you go to what you think is a specific problem that you face. What was the outrageous conduct? What did the government do that was outrageous? Well, they did two things. One, they suppressed this evidence. They didn't disclose the FBI investigation. That goes to a Sixth Amendment right to go ahead and cross-examine their primary witness. But then the one witness they're calling, Mr. Fail, they've got their case agent calling up, what the hell are you doing on the witness list for? That's a problem there. And the judge even said, look, yeah, he used poor judgment. Yeah, he tried to maybe dissuade this witness. You might want to rebut what he argued. What he argued was that you knew. No. No, you knew. The issue on that is that that evidence, we lost the value of that evidence, that 30% to 40% of these credit card applications are fake. That went to the knowledge issue. This case rose and fell on whether he had knowledge that these credit cards were issued to a real person as opposed to a fake person. That's why Terry Fail's testimony was so important, and that's why when he only got impeached and we didn't get a substantive testimony in, it hurt the defense. That's the problem there. I think we understand your position. Thank you very much. The case just argued and submitted.
judges: Farris, Noonan, Bybee